UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AMANDA L. OSBORNE,

                          Plaintiff,

            -against-                                    6:07-CV-0314 (LEK)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                          Defendant.

_____

## MEMORANDUM DECISION AND ORDER

## I.      INTRODUCTION

        In June of 2003, Amanda L. Osborne ("Plaintiff") filed an application for supplemental

security income benefits and disability insurance benefits under the Social Security Act ("the Act").

Plaintiff alleged that she had been unable to work since January 31, 2003.  The Commissioner of

Social Security ("the Commissioner") denied Plaintiff's application for lack of disability.

        Plaintiff, through her attorney, commenced this action on March 26, 2007, by filing a

Complaint in the United States District Court for the Northern District of New York.  Compl. (Dkt.

No. 1).  Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).


## II.     BACKGROUND

        The relevant procedural history may be summarized as follows.  Plaintiff filed an application

for disability and disability insurance benefits pursuant to the Social Security Act §§ 216(I) and 223,

as amended, 42 U.S.C. §§ 416(I) and 423 on June 6, 2003.  Compl. ¶ 4.  Her application was

initially denied on December 5, 2003.  R. at 43-47.[1]  Plaintiff timely filed a request for a hearing

before an Administrative Law Judge ("ALJ") on December 29, 2003.  R. at 48.  On May 9, 2005,

Plaintiff appeared before ALJ Christine McCafferty.  R. at 16.  The ALJ rendered her decision

denying Plaintiff's application for benefits on June 23, 2005.  R. at 13-28.  Plaintiff appealed this

decision to the Social Security Administration Appeals Council on July 18, 2005.  R. at 12.  On

January 23, 2007, the Appeals Council refused to review the ALJ's ruling, thereby rendering it the

Commissioner's final decision and exhausting Plaintiff's administrative remedies.  R. at 6.

Plaintiff, acting through counsel, initiated the present action by filing a Complaint on March

26, 2007.  Dkt. No. 1.  The Commissioner interposed an Answer on September 4, 2007.  Dkt. No. 9.

Thereafter, Plaintiff filed a supporting Brief on October 12, 2007, Pl.'s Br. in Supp. (Dkt. No. 11),

and the Commissioner filed a Brief in opposition on January 22, 2008, Def.'s Br. in Opp'n (Dkt.

No. 14), each seeking judgment on the pleadings.

## III.    DISCUSSION

### A.      Standard of Review

District courts have jurisdiction to review claims contesting a final decision by the

Commission of Social Security denying disability benefits.  42 U.S.C. § 405(g); 42 U.S.C. §

1383(c)(3).  In reviewing any such claim, a district court may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d

856, 860 (2d Cir. 1990).  Rather, it must defer to the Commissioner's determination unless the

correct legal standards were not applied or that substantial evidence in the record does not support

---

[1] Citations to the underlying administrative record are designated as "R."  Dkt. No. 8.

determination.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles").

"Substantial evidence" requires more than a mere scintilla of evidence, yet less than a preponderance.  Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986).  It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Ryan v. Astrue, 650 F. Supp. 2d 207, 216 (N.D.N.Y. 2009).  Where evidence is susceptible to more than one rational interpretation, a court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Barnett v. Apfel, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g).  Granting judgment on the pleadings is

3

appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings.  Fed. R. Civ. P. 12(c); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is most appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).  Additionally, remand is appropriate to allow for the consideration of additional new evidence which is material to the case and where good cause exists for the failure to submit that evidence in prior proceedings.  Melkonyan v. Sullivan, 501 U.S. 89 (1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).  By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose.  Rosa, 168 F.3d at 83; Parker, 626 F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

**B.    Analysis**

Under the Social Security Act, an individual is disabled if he or she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  The Social Security Administration ("SSA") has established a five-step sequential evaluation process to determine whether a claimant over the age of 18 is disabled under the Social Security Act.  See 20 C.F.R. §§ 416.920, 404.1520; see also Bowen v. Yuckert, 482 U.S. 137 (1987) (upholding the validity of this

evaluation process); <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).  The plaintiff bears the

burden of proof for the first four steps, and the Commissioner bears that burden in step five.  <u>See</u>

<u>Bowen</u>, 482 U.S. at 146; <u>Berry</u>, 675 F.2d at 467.

20 C.F.R. § 404.1520 details the SSA's five step analysis: in step one, the ALJ considers

whether the claimant is currently engaged in substantial gainful activity.[2]  If the claimant is not

engaged in such activity, the ALJ advances to step two of the analysis and considers whether the

claimant has a severe impairment meeting the "durational requirement"[3] and significantly limiting

her physical or mental ability to perform basic work activities.  In making this determination, the

ALJ does not consider the claimant's age, education, or work experience.  Assuming the ALJ finds

the claimant has a severe impairment(s), the ALJ continues to step three and determines whether the

impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4

("the Listings").  If the ALJ concludes that the claimant's impairment(s) does meet or equal one or

more of the Listings, the claimant shall be deemed disabled.  If the claimant's impairment(s) does

not meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess

whether, despite the claimant's severe impairment, the claimant's residual functional capacity

("RFC")[4] allows her to perform her past work.  If the answer to that inquiry is that the claimant is

---

[2] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities."  20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

[3] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months.  20 C.F.R. § 404.1509.

[4] RFC is defined as the most a claimant can do after considering the effects of all his or her medically determinable physical and mental limitations, including those not deemed "severe."  <u>See</u> 20 C.F.R. 404.1545; SSR 96-8p.

unable to perform her past work, the fifth step asks the ALJ to determine, in light of the claimant's RFC and other vocational factors, including the claimant's age, education, and work experience, whether the claimant could perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520; 20 C.F.R. § 404.1560; see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

### I.     The Commissioner's Decision

The ALJ determined that Plaintiff "ha[d] not engaged in substantial gainful activity since her alleged onset date, January 31, 2003."  R. at 18.  The ALJ found that Plaintiff "ha[d] a history of bilateral shoulder surgeries, cervical disc disease, obesity, asthma, sleep apnea, depression, and a history of drug and alcohol dependence."  R. at 18.  The ALJ concluded that the combination of these impairments were "'severe' within the meaning of the Regulations, but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  R. at 18.  The ALJ further found that Plaintiff had the residual functional capacity to perform a significant range of light work, and necessarily, sedentary work.  R. at 26.  The ALJ next concluded that, considering Plaintiff's RFC, age, education, and past work experience, jobs were present in significant numbers in the national economy that Plaintiff could perform.  R. at 26.  Accordingly, the ALJ found that Plaintiff was not disabled at any time within the meaning of the Act.  R. at 26.

### ii.     The ALJ's Ruling Must be Upheld Because it was Supported by Substantial Evidence.

Plaintiff contends that the Commissioner's decision should be reversed and offers two primary arguments in support of her position.  Plaintiff contends that: (a) the ALJ's findings

regarding Plaintiff's RFC were not supported by substantial evidence, Pl.'s Br. in Supp. at 8; and (b)

"the [ALJ] improperly evaluated the plaintiff's allegations of disabling pain," id. at 15.

> a.     Plaintiff's Residual Functional Capacity, as Determined by the ALJ, is
>        Supported by Substantial Evidence.

Plaintiff argues that the ALJ's ruling against Plaintiff should be reversed because the ALJ:

(1) "failed to state the acceptable medical evidence upon which she relied in determining

[Plaintiff's] residual functional capacity;" and (2) failed to make complete and specific findings

with respect to each element of the light work residual functional capacity classification.  Id. at 8.

These arguments will be addressed in turn.

> 1.     *Plaintiff's claim that the ALJ misapplied the treating*
>        *physician's rule is unfounded.*

Plaintiff argues that the ALJ "completely fail[ed] to indicate which items of evidence

support her findings."  Pl.'s Br. in Supp. at 10.  Additionally, Plaintiff alleges that the ALJ "cite[d]

no acceptable medical evidence in support of the specific functional capacity that she sets forth in

her Decision."  Id.  Plaintiff further claims that the ALJ "failed to accord appropriate weight to the

opinions of the various medical sources of record."  Id.  For these reasons, Plaintiff argues that the

ALJ's decision is not supported by substantial evidence and must be reversed.  Id. at 4.

Plaintiff's argument relies, in part, upon the "treating physician's rule."  That rule emerges

from the provisions set forth in 20 C.F.R. § 404.1527, which describe how an ALJ should weigh a

treating physician's opinion.  See de Roman v. Barnhart, No. 03-Civ.0075, 2003 WL 21511160, at

*9 (S.D.N.Y. July 2, 2003).  Under the regulations, an ALJ must give controlling weight to a

treating physician's opinion when it "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

record." 20 C.F.R. § 404.1527(d)(2); <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31-32 (2d Cir. 2004);

<u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000).  Where a treating physician's opinion is deemed

undeserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain

circumstances.  20 C.F.R. § 404.1527(d).  When determining the proper weight to afford the treating

physician's opinion if it is not entitled to controlling weight, an ALJ should consider the: (1) length

of the treatment relationship and the frequency of examination, (2) nature and extent of the

treatment relationship, (3) supportability of opinion, (4) consistency of opinion with the record as

whole, (5) specialization of the treating physician, and (6) other factors brought to the attention of

the court.  20 C.F.R. § 404.1527(d)(1)-(6); <u>see also</u> <u>de Roman</u>, 2003 WL 21511160, at *9 (citing

<u>Shaw</u>, 221 F.3d at 134; <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir.1998); <u>Schaal v.

Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998) and others).

 Beyond the opinions of a claimant's treating physician, an ALJ is entitled to rely upon the

opinions of State agency medical consultants, as these consultants are deemed qualified experts in

the field of social security disability.  <u>See</u> 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2),

416.912(b)(6), 416.913(c), and 416.927(f)(2); <u>see also</u>  <u>Diaz v. Shalala</u>, 59 F.3d 307, 313 n.5 (2d

Cir. 1995) (citing <u>Shisler v. Sullivan</u>, 3 F.3d 563, 567-68 (2d Cir. 1993).  Where an ALJ does rely

upon State agency medical consultants' opinions, she should state the weight given to those

opinions.  20 C.F.R. § 404.1527(f)(2)(ii).

 Plaintiff's alleged disabilities include: shoulder injury, hand injury, sleep apnea, depression,

and anxiety.  R. at 75.  For treatment and consultation, Plaintiff was seen by a number of physicians.

Chief among these is Dr. George, her treating physician and general practitioner since 1974.  R. at

236.  Another of Plaintiff's treating physicians is surgeon, Dr. Bhatt.  Dr. Bhatt saw Plaintiff a

number of times and performed surgery on her right shoulder.  R. at 99-103.  Plaintiff additionally

had spinal x-rays viewed by Dr. Sternick at Rome Memorial Hospital in April 2003, R. at 92, and

saw a consultative internist, Dr. Ganesh, in September 2003, R. at 139-43.  Dr. Kotwal performed

psychiatric evaluations on Plaintiff from mid-July to late September 2005.  R. at 295-310.  In

addition, Plaintiff saw consultative psychologist, Dr. Shapiro, R. at 134-38, and New York State

consultative psychologist, Dr. Tatar, in September 2003, R. at 150-68.  The ALJ's finding that none

of Plaintiff's alleged injuries prevent her from working was based on substantial evidence gathered

from these medical professionals.

The ALJ's ruling that Plaintiff's shoulder injuries do not prevent her from working is

supported by substantial evidence.  Plaintiff underwent arthroscopic surgery on her right shoulder in

July 2003.  R. at 99.  However, on September 15, 2003, Plaintiff's orthopaedic surgeon Dr. Bhatt

noted that "[t]he internal rotation of right shoulder [is] almost comparable to the opposite normal

side."  R. at 201.  These notes by Dr. Bhatt provide substantial support for the ALJ's conclusion that

Plaintiff's right shoulder did not prevent her from working.  As noted by the Social Security

Administration, Plaintiff presented no medical evidence of significant functional limitation in her

left shoulder.  Def.'s Br. in Opp'n 18.

Substantial evidence also supports the conclusion that Plaintiff's purported hand

impairments did not prevent her from working.  Plaintiff testified to having limited use of her hands.

R. at 342-43.  Plaintiff stated that she has "hardly any strength in [her] hands, because of the

numbness.  R. at 343.  However, this testimony is inconsistent with findings made by Dr. Ganesh

that Plaintiff's "[h]and and finger dexterity (were) intact," and her "[g]rip strength (was) 5/5

bilaterally."  R. at 142.

Substantial evidence underlies the ALJ's conclusion that Plaintiff's spinal impairments did not prevent her from working.  In April 2003, Dr. Sternick reviewed x-rays of Plaintiff's cervical spine, finding a "[v]ery slight S-shaped curvature," and "[n]o fracture."  R. at 92.  Additionally, in September 2003, Dr. Ganesh noted that Plaintiff's "[c]ervical spine show[ed] full flexion, extension, lateral flexion, and full rotary movement bilaterally," and her "[l]umbar spine show[ed] full flexion, extension, lateral flexion, and full rotary movement bilaterally."  R. at 141.  Dr. Ganesh also found "[n]o scoliosis, kyphosis, or abnormality in the thoratic spine."  R. at 141.

In addition, the ALJ's finding that Plaintiff's mental condition did not prevent her from working is supported by substantial evidence.  Plaintiff's treating physician, Dr. George, was of the opinion that Plaintiff possessed a "Fair" capacity to "Follow Work Rules," "Relate to co-workers," "Deal with the Public," "Use (Good) Judgment," "Deal with Work Stress," "Understand, remember and carry out detailed but not complex job instructions," "Relate predictably in social situations," and "Demonstrate reliability."  R. at 242-43.  Dr. George also opined that Plaintiff's capacity to "Interact with Supervisor(s)," "Understand, remember and carry out simple job instructions," and "Behave in an emotionally stable manner" was "Good."  R. at 242-43.  These opinions by Plaintiff's treating physician are consistent with those of the consultative psychologists, Dr. Shapiro and Dr. Tatar.

On September 10, 2003, Dr. Shapiro, noted that Plaintiff's "thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking," and that "[Plaintiff's] demeanor and responsiveness to questions was cooperative," "[h]er manner of relating, social skills, and overall presentation was adequate," "[h]er attention and concentration w[ere] intact," and "[s]he was able to do counting, simple calculations, and serial 3s."  R. at 136.  In

addition, Dr. Tatar, opined that "[Plaintiff] appear[ed] able to follow simple and some complex

instructions, sustain a pace and relate to others in a work situation."  R. at 153.

Generally, the ALJ is required to state the weight given to state agency doctors like Dr.

Shapiro and Dr. Tatar.  20 C.F.R. 404.1527(f)(2)(ii).  However, failure to do so does not constitute

reversible error where that failure is harmless.  See Pease v. Astrue, No. 5:06-CV-0264, 2008 WL

4371779, at *8 (N.D.N.Y. Sept. 17, 2008) ("[t]he mere fact that the ALJ did not specifically state

the weight afforded [the doctor's] opinion does not mean that the opinion was not properly

considered . . . and does not provide a basis for a remand to the Commissioner").  Given the ALJ's

discussion of the opinions of Dr. Shapiro and Dr. Tatar, it is clear that these opinions were given

some weight and consideration in forming her determination.  As noted above, the opinions of these

consultative psychologists were consistent with the opinion of Plaintiff's treating physician, Dr.

George.  Thus, the ALJ's failure to state the precise weight given to the opinions of psychological

consultants is harmless error.

> 2.    *The ALJ's failure to find the frequency at which Plaintiff can*
>       *lift 20 pounds does not constitute reversible error.*

Plaintiff argues that the Commissioner's ruling should be remanded because "[t]he [ALJ]

failed to indicate whether or not [Plaintiff's] ability to lift 20 pounds was on either an occasional or

frequent basis."  Pl.'s Br. in Supp. at 8.  Plaintiff argues that "the frequency of lifting is essential to a

determination with regard to the ability to perform the full range of light work activity."  Id. at 9.

Plaintiff contends that "[t]his failure alone would result in a remand since the [ALJ's] decision does

not comply with the requirements set forth in [the Code of Federal Regulations]."  Id. at 8.

Plaintiff notes that Social Security Ruling 96-9p highlights the importance of a "function by

function accounting of an individual's capacities," and claims that the ALJ's "failure to make specific findings with regard to all of the requirements of light work is a legal error that undermines her decision to deny [Plaintiff's] claim." Pl.'s Br. in Supp. at 9-10.  However, the Second Circuit has held that "the Commissioner need only show that there is work in the national economy that the claimant can do." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).  Therefore, if the ALJ's determination of Plaintiff's residual functional capacity is sufficient to support the ruling that "there is work in the national economy that [Plaintiff] can do," the ALJ's decision should stand. Poupore, 566 F.3d at 306.

Although Plaintiff claims the ALJ erred in not making a finding with regard to the frequency with which Plaintiff could lift 20 pounds, such a finding was not necessary because the ALJ did not find that Plaintiff could perform the full range of light work.  Specifically, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  The ALJ clearly stated that "[Plaintiff] is capable of performing a significant range of **light work** as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)." R. at 26 (emphasis in original).  This finding, by definition, does not encompass the entire range of light work defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and is not altogether uncommon. See, e.g., Legg v. Astrue, No. 06-CV-0167, 2008 WL 2323403 (N.D.N.Y. June 2, 2008); Yannone v. Astrue, No. 06 Civ. 15502, 2010 WL 743963 (S.D.N.Y. March 3, 2010); Pena v. Astrue, No. 07 Civ. 11099, 2008 WL 5111317 (S.D.N.Y. Dec. 3, 2008); see also 20 C.F.R. §§ 404.1567(b) (implicitly recognizing degrees of ability to perform light work that, nevertheless, do not allow for performing a full or even wide range of light work).  Moreover, based on the testimony of a vocational expert, the ALJ found that Plaintiff is capable of work as a cashier, counter clerk,

gate guard, or office helper.  R. at 26.  The vocational expert was able to recommend these jobs for

Plaintiff based on Plaintiff's capacity to work according to the ALJ's findings.  R. at 26.  The ALJ's

determination that Plaintiff was "capable of performing a significant range of light work," R. at 26,

must stand because the Commissioner met his burden of showing that work which Plaintiff is

capable of performing sufficiently exists in the national economy.

**b.**     **The ALJ Did Not Err in Determining that Plaintiff's Testimony was Not Credible.**

Plaintiff alleges that the ALJ erred in determining that Plaintiff's testimony was not credible

because the pain and symptoms testified to were supported by medical evidence and physicians'

opinions.  Pl.'s Br. in Supp. at 16.  The factors an ALJ may assess in order to determine whether a

disability exists include: "(1) the objective medical facts; (2) diagnoses or medical opinions based

on these facts; (3) subjective evidence of pain and disability testified to by the [plaintiff] and family

or others; and (4) the [plaintiff's] educational background, age, and work experience."  Gold v.

Sec'y of Health, Education, & Welfare, 463 F.2d 38, 41, n. 2 (2d Cir. 1972) (citing Underwood v.

Rubicoff, 298 F.2d 850 (4th Cir. 1962)).  In assessing the credibility of the subjective evidence of

pain and disability provided by the plaintiff's testimony, the ALJ considers the objective medical

evidence and a number of other factors.  SSR 96-7p.  These factors include:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses to relieve pain or other symptoms. . .; and

13

    7. Any other factors concerning the individual's functional limitations and
       restrictions due to pain or other symptoms.

Id.  Therefore, evidence falling into any of these categories could be substantial and sufficient to

support a finding that a claimant's testimony regarding pain and other symptoms was not credible.

    Here, the ALJ found Plaintiff's testimony "not fully credible or persuasive, to the extent that

would suggest that she is unable to work at all, e.g., unable to perform even light exertional work

involving simple, routine tasks."  R. at 21.  The ALJ noted the ailments Plaintiff asserts in her claim,

including: right shoulder surgery, lack of strength in her hands, hand numbness, asthma, cervical pain

syndrome, and depression.  R. at 21.  The ALJ did not deny that Plaintiff had a number of

impairments, but found substantial evidence, as noted above, to support her determination that those

impairments did not prevent her from working.  R. at 21.  The ALJ then noted the reasons for which

Plaintiff's testimony regarding the severity of these ailments was not credible.

    As cited above, the ALJ is free to consider "[f]actors that precipitate and aggravate the

symptoms" in assessing the credibility of a plaintiff's testimony.  SSR 96-7p.  Here, the ALJ called

Plaintiff's testimony as a whole into question because Plaintiff had been abusing drugs and alcohol

and lied about this fact to her physician, Dr. George.  R. at 23.  The ALJ found Plaintiff's testimony

not credible regarding: her lack of strength and numbness in her hands because Dr. Ganesh noted

that her "[h]and and finger dexterity (were) intact," and her "[g]rip strength (was) 5/5 bilaterally," R.

at 142; the severity of her asthma because her asthmatic state is considered "controlled by regular

bronchodilator therapy" and "she [smokes] 1 pack (of cigarettes) per day," R. at 21; her cervical

pain syndrome because an MRI on August 18, 2004 "showed . . . no stenosis or nerve root

impingement," R. at 21; and her mental inability to work because the consultative psychologist, "Dr.

Shapiro was oblivious to the claimant's substance addiction disorder," and psychologist, Dr. Tatar, found Plaintiff to be "able to follow simple and some complex instructions, sustain a pace, and relate to others in a work situation," R. at 24-25.

The ALJ also made note of the numerous medical findings by Dr. George that Plaintiff's various conditions were "'controlled,' 'corrected,' and/or 'within normal limits,'" and Dr. Bhatt's assessment that Plaintiff was "doing well" after her 2003 surgery for her right shoulder and cervical disc disease.  R. at 23.  These facts amount to "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's conclusion that Plaintiff's testimony was not credible, thereby constituting substantial evidence in support of that conclusion.  Consol. Edison Co., 305 U.S. at 229.

The ALJ may also consider "[t]he individual's daily activities" in determining a plaintiff's credibility.  SSR 96-7p.  Here, the ALJ made note of the facts that Plaintiff "owns and drives a car, is able to visit and watch her 11-month-old grandson at times, and is able to perform light household chores, with breaks."  R. at 21.  These findings are supported by Plaintiff's testimony that she: owns a car, has a driver's license, and drove to the hearing, R. at 331-32; performs household chores, including washing dishes and watering plants, R. at 336; and visits and babysits her grandson, R. at 336-37.  Thus, the ALJ's conclusion that Plaintiff is able to perform some light work, was reasonable and supported by substantial evidence in the record.

Taken as a whole, the evidence cited by the ALJ in support of her determination that Plaintiff's testimony is not credible is substantial.  As long as the ALJ's findings are supported by substantial evidence, this Court must uphold them.  Valente, 733 F.2d at 1041.  Therefore, the Court shall not disturb the Social Security Administration's ruling due to any error in the ALJ's determination that

15

Plaintiff's testimony is not credible.

## IV.    CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**, that

Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, and that the decision of the

Commissioner is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's determination of no disability is **AFFIRMED**, and

Plaintiff's Complaint is **DISMISSED** in all respects; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:   July 09, 2010
                Albany, New York

Lawrence E. Kahn
U.S. District Judge